## SPINKS REALTY CO. v. BURNET, Com'r of Internal Revenue.

### No. 5535.

Court of Appeals of the District of Columbia.

Argued Nov. 1, 1932.

Decided Dec. 5, 1932.

Rehearing Denied Dec. 30, 1932.

Allen H. Gardner, of Washington, D. C., for appellant.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key, Carlton Fox, C. M. Charest, and W. Frank Gibbs, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

This case involves appellant's income taxes for the calendar years 1923, 1924, and 1925. Appellant in 1919 acquired certain real estate in the city of Los Angeles. The property so acquired was then under lease and so continued until during the year 1923, when the lease expired. Prior to the expiration of the lease appellant could have secured renewals for a five-year term on a profitable basis, but the buildings were of frame and there was a suggestion that they might be condemned by the city authorities as a fire menace. Instead, therefore, of renewing the lease on the old building, appellant leased the property for a term of ninety-nine years. The new lease provided that the lessee should demolish and remove the frame building and replace it with a thirteen-story fireproof building, and that the new building, or any other building that might thereafter be erected on the premises, should, on the termination of the lease, be the property of the lessor.

The old building was removed, and it is conceded that its depreciated cost immediately before its destruction amounted to $64,-187.50. This amount appellant deducted in his 1923 return as a loss.

Appellant, in the year 1923, paid out $10,-000 as commissions to certain parties for their services in negotiating the ninety-nine year lease, and $230.05 for miscellaneous expenses in connection with the lease, and in 1924 the further sum of $2,876.36. The $10,-000 commission and the $230.05 item appellant deducted from its return for 1923 as ordinary and necessary business expenses, and in 1924 deducted the amount paid out in that year, and the excesses of losses over income in the years 1923 and 1924 were carried forward to the year 1925.

The commissioner held that the depreciated cost of the building demolished and the amounts paid out in negotiating the lease should be amortized over the term of the ninety-nine year lease. On appeal, the board held: First, that the depreciated cost of the building became a part of the cost to appellant of the ninety-nine year lease, and should be amortized over the full term; and, second, that the amounts expended in securing the lease were capital expenditures to be spread over the whole period. Appellant insists the decision of the board is wrong in both respects.

As to the first holding, the applicable statute (section 234 (a) of Revenue Act of 1921, 42 Stat. 227) provides that in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions (4) losses sustained during the taxable year and not compensated for by insurance or otherwise. The Treasury Regulations (62, art. 142) made pursuant to the above section recognize the right to deduction in the case of the voluntary removal or destruction of old buildings by the owner.

The precise question which we have here to decide is not new, and a similar decision of the commissioner has in like circumstances been sustained by the board in a number of cases. See Manning Case, 7 B. T. A. 286; Ward Case, 7 B. T. A. 1107; Pig & Whistle Case, 9 B. T. A. 668; Eysenbach Case, 10 B. T. A. 716; Anahma Realty Corp. Case, 16 B. T. A. 749; Mary C. Young Case, 20 B. T. A. 692. The two last-mentioned cases were appealed, and the decision of the board was sustained in the first in an opinion by Judge Manton (Second Circuit) 42 F.(2d) 128, and in the other in an opinion by Judge James (Ninth Circuit) 59 F.(2d) 691, 692. The ground of the holding in each case was that the depreciated value of the building destroyed represents a part of the cost of the new lease and as such should be capitalized and exhausted ratably over the term of the lease. In other words, that the new lease, containing as it did in all the cases a provision that the new building should at the expiration of the lease become the property of the owner of the fee, furnished a compensating value for the loss of the old building, that the lease itself was an asset, and that the destruction of the old buildings was a part of the cost of acquiring this asset and was therefore not deductible as a business loss for the year in which it was incurred. In the Young Case,

supra, the Court of Appeals said: "There can be no question that, where a landowner finds it necessary to remove structures unsuitable for further use, he may have a reduction from gross income for the loss. On the other hand, where he finds it advantageous to remove substantial buildings in order to secure a lease which will result in his having erected on his property a new building, without money outlay on his part for its construction, and to have assured a large rental income for a long term of years, it would seem just and reasonable that the value of the buildings removed be charged as a contribution to the cost of securing his lease, and as a part of the investment then made for that purpose."

The reasoning of the previous cases decided by the board, as well as those decided in the two circuits which we have noted, is attacked as illogical, and we are asked to reach a different conclusion. To support this, it is insisted that the depreciated value of the old building was not considered in making the new lease and was not a consideration for it, and that as a result, upon its destruction by the lessee, appellant sustained the same loss it would have sustained if it had itself demolished the building. If that were the case, it is conceded the loss would have been deductible, but the difference, as we view it, is that in such a case the owner would have gotten nothing "by insurance or otherwise," whereas, as the case now is, it gets a lease on a new building erected at no cost to itself; the rent during the leased period, and at its expiration title to the new building. In these circumstances it has not sustained, as we think, a deductible loss. On this branch of the case we are disposed to follow and adopt the conclusions reached in the second and ninth circuits.

■ This leaves only for consideration the question whether the commission paid to the real estate broker in negotiating the lease is deductible as a business expense under section 234 (a) (1) of the act. The fee admittedly was paid to secure a tenant for a term of ninety-nine years, which, as we have already

seen, provided not only for a handsome annual rental but for the transfer of the ownership of the building at the end of the term. The payment, as was found by the board, was for services to the lessor in securing the lessee's obligation to pay rental for a long term of years, and was attributable to all the years covered by the lease, and should therefore be spread or prorated over the term of the lease.

Some distinction is attempted to be made in appellant's brief in a case where, as is claimed to be true here, the taxpayer keeps his books on a cash basis, but we see no point to this, for, even if its books were kept on an accrual basis, it would not, in our opinion, affect the result, since the item with which we are now concerned, being payable in 1923, did accrue and would be deductible in that year if it could be shown to be an ordinary expense of carrying on the business, but we think this was not the case, but on the contrary that the payment of the commission was nothing else than a money payment made in acquiring the lease, that is to say, the right to receive the rentals payable under it during the ninety-nine year term, and, considered in that aspect, it cannot, we think, be considered an expense in carrying on a trade or business. The payment, it is quite true, is a business expense but obviously not an expense allocable to any one year of the lease. It was paid to secure a lease running for ninety-nine years, and when spread over that whole period reflects correctly the true amount of the annual rentals, and, if that be true, appellant is entitled to its return, in the circumstances existing here, in proportionate amounts over the period of the life of the lease. In this respect also we find our views to accord with those expressed in opinions in similar cases in three of the circuits, to which we refer for a full discussion of the reason therefor. See Bonwit Teller & Co. v. Commissioner (C. C. A.) 53 F.(2d) 381; Central Bank Block Ass'n v. Commissioner (C. C. A.) 57 F.(2d) 5; and Young v. Commissioner, supra.

In this view the decision of the Board should be affirmed.

Affirmed.