## COMMISSIONER OF INTERNAL REVENUE v. APPLEBY'S ESTATE et al.

### SAME v. APPLEBY.

#### Nos. 71, 72.

Circuit Court of Appeals, Second Circuit.

Dec. 1, 1941.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Helen R. Carloss and Harry Marselli, Sp. Assts. to the Atty. Gen., for petitioner.

John B. Coman, of New York City (Cuthell, Appleby, Osterhout & Mills, of New York City, of counsel), for respondent Edgar S. Appleby's Estate.

Banton Moore, of New York City (Townsend L. Cannon, of New York City, of counsel), for respondent John S. Appleby.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

These consolidated petitions involve the 1934 income tax liability of two brothers who acquired by devise under their father's will, on December 15, 1913, a tract of land which the city of New York condemned in 1933 and paid for in 1934. This resulted in a profit to each of the taxpayers. The amount thereof is the matter in dispute. Two questions are presented: (1) Whether the increment of $67,573.95 added to the condemnation award by reason of the lapse of time between the taking of the property in January, 1933, and the payment therefor in October, 1934, should be considered as capital gain or normal income; and (2) whether the cost basis of the improvements taken in condemnation should include the value of structures demolished in 1917 to make way for the erection of the building condemned. The first question is common to both of the cases on appeal; the second affects only the tax of John S. Appleby.

In holding that the increment to the award must be treated as capital gain rather than normal income, although denominated "interest", the Board followed the decision of this court in Seaside Improvement Co. v. Commissioner, 105 F.2d 990. The authorities which lead to that conclusion are there discussed, and we still feel constrained to follow them, though if the matter were tabula rasa not all of the court as now constituted would reach that conclusion. We pass therefore to the second question.

When the property was acquired by the taxpayers in 1913 it was improved with structures having a value at that time of $14,000. These buildings yielded an inadequate return and in 1917 they were torn down to make way for the erection of a garage, for which prospective tenants had been found. The garage was completed in 1918 and was taken in condemnation in 1933. The Board held, sustaining the position of the taxpayers, that the depreciated value of the structures demolished in 1917 should be added to the cost basis of the garage, since the cost of demolition was a necessary incident in the cost of the new building.

The commissioner contends that the Board's decision disregards the applicable provisions of the treasury regulations promulgated under the Revenue Act of 1916 and carried forward in substantially the same form in the later regulations, including those applicable to the year 1934. See Arts. 155 and 156, Reg. 33; Art. 142, Regs. 45, 62, 65 and 69; Art. 172, Reg. 77; Art. 23(e)-2, Reg. 86. He argues that pursuant to these provisions, which have the force of law, the taxpayer would have been per-

mitted to deduct from his 1917 gross income the loss sustained by demolition of the old buildings, and is forbidden to add it to the cost basis of the new building. Although the regulations appear at first blush to favor the commissioner's position, we are convinced that neither branch of his argument is sound.

■■ It is true that Article 155 of Regulations 33 declares that "loss due to voluntary removal or demolition of old buildings * * * will be deductible from gross income * * *." But this language cannot be read so broadly as to permit deductions not recognized by the statute. Subdivisions fourth and fifth of section 5(a) of the Revenue Act of 1916, 39 Stat. 759, are the only provisions which can be thought to authorize deduction of a loss resulting from voluntary demolition of old buildings; but the former is restricted to losses incurred in the taxpayer's business or trade, and the latter, which relates to losses incurred in transactions entered into for profit but not connected with his business or trade, limits the loss "sustained therein" to an amount "not exceeding the profits arising therefrom." Since the property was not used in the taxpayer's business and produced no profits in 1917, we are satisfied that the Board was correct in ruling that no deduction for demolition of the buildings could have been taken that year.

■■ The second branch of the commissioner's argument rests upon Article 156 of Regulations 33, which declares that "when a corporation" [amended in later issues of the regulations to "when a taxpayer"] "buys" real estate improved with a building, "which he proceeds to raze with a view to erecting thereon another building," no deductible loss will be recognized by reason of the demolition of the old building, but it will be considered that "the value of the real estate, exclusive of old improvements, is equal to the purchase price of the land and buildings." The contention is that these provisions exclude by implication cases where the taxpayer has no such intention at the time of purchase or acquires the property otherwise than by purchase. No decision has been called to our attention which has accepted this construction of the regulation, and it has been expressly repudiated in at least one case. Young v. Commissioner, 9 Cir., 59 F.2d 691, 692. See, also, Anahma Realty Corp. v. Commissioner, 2 Cir., 42 F.2d 128. The regulation under discussion states the rule to be applied in a common situation, namely, the purchase of improved real estate with the intent to raze the old improvements and rebuild. It would be unreasonable to hold that the statement of a rule for this single instance excludes application of a similar rule to cases where the intent to raze and rebuild was formed after the property was acquired. Losses are recognized only when they result from a closed transaction. If a building is demolished because unsuitable for further use, the transaction with respect to the building is closed and the taxpayer may take his loss; but if the purpose of demolition is to make way for the erection of a new structure, the result is merely to substitute a more valuable asset for the less valuable and the loss from demolition may reasonably be considered as part of the cost of the new asset and to be depreciated during its life, as is a broker's commission for negotiating a lease. Central Bank Block Ass'n v. Commissioner, 5 Cir., 57 F.2d 5; Bonwit Teller Co. v. Commissioner, 2 Cir., 53 F.2d 381, 82 A.L.R. 325. The cases which have dealt with the regulations under discussion are not out of harmony with this view. Providence Journal Co. v. Broderick, 1 Cir., 104 F.2d 614; Spinks Realty Co. v. Burnet, 61 App.D.C. 321, 62 F.2d 860; Young v. Commissioner, 9 Cir., 59 F.2d 691; Anahma Realty Corp. v. Commissioner, 2 Cir., 42 F.2d 128; Liberty Baking Co. v. Heiner, 3 Cir., 37 F.2d 703; cf. Union Bed & Spring Co. v. Commissioner, 7 Cir., 39 F.2d 383.

We find no error in the Board's decisions. Orders affirmed.